UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 1:11-cr-00026-TWP-KPF |
| GEOFFRIE ALLEN LEE DILL, | ) ) ) | |
| Defendant. | ) | |

### ORDER ON MOTION TO SUPPRESS

This cause is before the Court on Defendant Geoffrie Allen Lee Dill's ("Dill") Motion to Suppress (Dkt. #28). Specifically, Dill seeks to suppress all evidence obtained from searches of his person and vehicle conducted in accordance with a traffic stop and arrest on January 25, 2011. The Court held hearings on Dill's Motion to Suppress on June 8, 2011 and November 18, 2011. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings and conclusions of law. For the reasons set forth herein, Dill's Motion to Suppress (Dkt. #28) is **DENIED**.

### I. BACKGROUND

On January 25, 2011, at approximately 12:30 a.m., Indianapolis Metropolitan Police Department ("IMPD") Officer Jean Deddish ("Officer Deddish") was on patrol in a marked police vehicle traveling eastbound on Troy Avenue. Officer Deddish observed a white Oldsmobile Aurora traveling northbound toward Troy Avenue at a high rate of speed. Officer Deddish then observed the vehicle fail to properly stop at a stop sign, fail to signal before a turn and then merge eastbound onto Troy Avenue.

Officer Deddish initiated a traffic stop at the 2400 block of Troy Avenue. Dill pulled into a gas station lot and parked his vehicle near a gas pump. When Officer Deddish approached the vehicle she found a white male, who the Court now knows to be Dill, to be the driver and sole occupant of the vehicle. When asked for his driver's license and registration, Dill provided Officer Deddish with a registration for the vehicle, in Dill's name, and a driver's license in the name of Jay Haines. Upon closer inspection, Officer Deddish recognized that neither the picture nor the physical description on the driver's license appeared to match Dill.[1] At this point, a second IMPD officer, Officer Euler, arrived on the scene to assist. Officer Euler agreed that the license picture did not appear to match Dill. Officer Deddish requested that Dill step out of the vehicle and informed Dill that he did not appear to match the picture on the identification card and he wished to check the physical description on the license. Dill then told Officer Deddish that he had lied and that he was in fact Geoffrie Dill. Dill proceeded to inform Officer Deddish that his license was suspended, which Officer Deddish confirmed. Additionally, the officer learned that Dill's license was suspended with prior convictions and placed Dill under arrest.[2]

Because Dill was the driver and sole occupant of the vehicle and the vehicle could not be left at the gas station, Officer Deddish determined that the vehicle was to be impounded and she conducted an inventory search of the vehicle. As a result of the inventory search, the officers recovered a loaded Cobra .38 Special revolver, found in the center console, and a small bag which contained methamphetamine located in a prescription bottle. While watching Officer Deddish conduct the search, Dill offered that the bag did in fact contain methamphetamine which

---

[1] The driver's license indicated that Jay Haines was six feet tall with brown hair and brown eyes; while Dill has brown eyes and is significantly shorter than six feet.

[2] Ind. Code § 9-24-19-3 provides that a person who operates a vehicle with a suspended license as a result of conviction commits a Class A misdemeanor.

he had smoked approximately an hour beforehand. At the suppression hearing however, Dill denied that he had used any narcotics that date.

In addition to the inventory search of Dill's vehicle, Officer Deddish conducted a search of Dill's person. The initial search of Dill's person revealed cash in the amount of $1,608.00 and a second prescription bottle which also held a small bag of methamphetamine. A custodial transport vehicle later arrived to escort Dill to the Marion County Jail. Upon its arrival, a second more thorough search of Dill's person was conducted by the IMPD wagon transportation officer. In that search, officers discovered a larger bag under Dill's shirt which contained approximately twenty (20) grams of methamphetamine. After the inventory search of Dill's vehicle and the searches of Dill's person, IMPD dispatched a tow truck and Dill's vehicle was impounded with a hold for forfeiture.

Following Dill's arrest, the Federal Bureau of Investigation's Safe Streets Task Force adopted the case for federal prosecution. The federal case officer met with Officer Deddish and learned that Dill's cellular telephone had been left inside the impounded car. Dill's vehicle had not been retrieved and had remained in police custody. On January 27, 2011, a federal officer went to retrieve Dill's cellular telephone from the impounded vehicle.[3] In the process of obtaining the telephone, the federal officer observed several small 2"x2" bags on the dashboard in plain view. The officer retrieved both the cellular telephone and the bags from the car and has maintained custody of these items since that time.

Dill was indicted on three counts, including: (1) knowingly possessing with intent to distribute 5 grams or more or methamphetamine in violation of 21 U.S.C. § 841(a)(1); (2) knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 18

---

[3] Dill's vehicle had remained impounded at the Cook's Towing Service impound lot since his arrest on January 25, 2011.

U.S.C. 924(c)(1)(A); (3) knowingly possessing a firearm in and affecting interstate commerce after having been convicted of a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). In this motion, Dill alleges that the warrantless search of his person and his vehicle violated the Fourth Amendment and, thus, any evidence obtained as a result of those searches must be suppressed.

## II. DISCUSSION

Dill asserts that the traffic stop which led to his arrest and the warrantless searches of his person and vehicle were unreasonable and, thus, unlawful. In *Katz v. United States,* 389 U.S. 347, 357 (1967), the Supreme Court stated that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions." In the present case, it is clear that the searches of Dill's person and vehicle were conducted without a warrant or prior approval by a judge. Therefore, it is necessary to determine whether the searches at issue fall within a few specifically established and well-delineated exceptions which allow for a lawful warrantless search and seizure.

### A. Validity of Dill's Traffic Stop and Arrest

At the hearing for Dill's Motion to Suppress, Dill asserted that the stop of his vehicle was pretextual and constituted an illegitimate basis for the warrantless searches of his person and vehicle. However, the facts presented before this Court indicate that this was not the case. Officer Deddish witnessed Dill fail to stop at a stop sign as he merged onto Troy Avenue. Gov. Ex. 1-1. Furthermore, Dill's own statements recorded during a jail call from the Marion County Jail indicate that he did, in fact, roll through the stop sign as he turned onto Troy Avenue. Gov.

Ex. 4. Failure to stop at a stop sign is a violation of Ind. Code § 9-21-8-32 and constitutes legitimate grounds for a traffic stop.

Dill's resulting arrest for driving with a suspended license was a lawful arrest. *See* Ind. Code § 9-24-19 (provides that a person who drives with a suspended license commits a Class A misdemeanor). The following analysis of the searches of Dill's person and vehicle are predicated upon the finding that the stop and subsequent arrest of Dill were indeed lawful.

**B.      Search of Dill's Person**

The search of one's person incident to a lawful arrest is a long-established exception to the requirements of the Fourth Amendment. It has been held that "in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment." *United States v. Robinson,* 414 U.S. 218, 235 (1973). "[I]t is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Chimel v. California*, 395 U.S. 752, 763 (1969). Because Officer Deddish had probable cause to arrest Dill for driving with a suspended license, Dill's arrest constituted a lawful arrest. Therefore, the search of Dill's person incident to that arrest and the seizure of evidence there from are permissible under the Fourth Amendment.

**C.      Initial Search of Dill's Vehicle**

In addition to the search of his person, Dill also challenges the constitutionality of the search and seizure of his vehicle. Specifically, Dill argues that while under arrest, he was not within reaching distance of the console of the vehicle, where the .38 Cobra was discovered, and that Officer Deddish had no reasonable basis to believe that a search of Dill's automobile would lead to evidence with respect to his driving with a suspended license. Dill buttresses his

argument with reference to *Hathaway v. State*, 906 N.E.2d 941, (Ind. Ct. App. 2009), and to *Arizona v. Gant*, 129 S.Ct. 1710 (2009). In *Gant*, the Court explained that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 1723. In *Hathaway*, using the standard promulgated by the Court in *Gant,* the court determined that because the officer's search of the defendant's automobile was not necessary to find and preserve evidence of the crime of driving with a suspended license, and because of a lack of facts suggesting that the Officer feared for his safety, the search incident to the defendant's arrest did not meet the exception for a search incident to arrest as explained in *Gant.* However, in this case, unlike *Hathaway,* the government is arguing that the search of Dill's automobile is a valid inventory search and is not arguing that the search is valid as a search incident to arrest.

In *Hathaway,* the court explained that no argument in favor of an inventory search was presented at trial and thus no such argument would be addressed. *Id.* at 945. Therefore, Dill's reliance on *Hathaway* is misplaced. Although the search in this case likely may not meet the exception for a search incident to an arrest as explained in *Gant*, the search in this case clearly satisfies the threshold for a lawful search incident to an arrest, as outlined in *United States v. Cartwright,* 630 F.3d 610 (7th Cir. 2010).

As explained by the Seventh Circuit Appellate Court in *Cartwright*, "[i]nventory searches constitute a well-recognized exception to the warrant requirement and are reasonable under the Fourth Amendment." *Cartwright,* 630 F.3d, at 613 (citing *South Dakota v. Opperman,* 428 U.S. 364, 376, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)). An inventory search of a vehicle is lawful so long as the possessor of that vehicle is the subject of a lawful arrest and the search is

conducted in accordance with existing inventory procedures. *Cartwright,* 630 F.3d at 614. In *Cartwright,* the court recognized the existence and validity of established impoundment and inventory procedures by which the IMPD operates. *Id.* at 615. IMPD policy permits and inventory search incident to the towing and impoundment of a vehicle "'operated by a non-licensed or suspended driver' or 'by [a] person under custodial arrest for any charge'." *Id.*

The facts in the instant case are clearly distinguished from those in *Hathaway.* As the government argues, the search performed upon Dill's automobile was a lawful inventory search conducted pursuant to IMPD policy. As discussed in *Cartwright*, IMPD policy permits and inventory search incident to the towing and impoundment of a vehicle "'operated by a non-licensed or suspended driver' or 'by [a] person under custodial arrest for any charge'." *Id.* In this case, following Dill's arrest and because Dill was the sole occupant of the automobile, Officer Deddish determined that Dill's automobile was to be impounded. Following the impoundment of the automobile, Officer Deddish conducted an inventory search of such automobile, pursuant to IMPD policy. The preceding search revealed a loaded .38 Special in the console of the automobile and revealed the presence of methamphetamine and oxycotin. Thus, because Dill was subject to a lawful arrest, and because the inventory search of his automobile was conducted in accordance with existing inventory procedures, this inventory search unquestionably meets the threshold for a proper inventory search as outlined in *Cartwright*. Therefore, the initial search of Dill's automobile was conducted in accordance with the Fourth Amendment.

D.   **Secondary Search of Dill's Vehicle**

The final issue that this Court must address is whether the second search of Dill's vehicle conducted on January 27, 2011, was lawful. Another well-recognized exception to the Fourth Amendment's warrant requirement is the automobile exception which was first recognized in

7

*Carrol v. United States,* 267 U.S. 132 (1925). Under the automobile exception, a warrantless search of a vehicle is reasonable when there is probable cause to believe that the vehicle contains evidence of a crime. *United States v. Zahursky,* 580 F.3d 515, 521 (7th Cir. 2009). An officer has probable cause when, based on the totality of circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983).

In the instant case, there was probable cause for the federal officer to conduct a search of Dill's vehicle on January 27, 2011. The federal officer was informed by Officer Deddish that Dill's cellular telephone had been left inside Dill's vehicle after the initial search. It is reasonable to believe that there existed more than a "fair probability" that Dill's telephone was in the vehicle and that it contained evidence relating to Dill's alleged drug trafficking activities. Therefore, the search of Dill's vehicle on January 27, 2011, and the seizure of evidence resulting from that search do not violate the Fourth Amendment.

### III. CONCLUSION

For the aforementioned reasons, Dill's Motion to Suppress (Dkt. #28) is **DENIED**.

SO ORDERED:

Date: 11/18/2011

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Loren J. Comstock
lorenjcomstock1@yahoo.com

Michelle P. Brady
United States Attorney's Office
michelle.brady@usdoj.gov